Argued April 2, affirmed July 23, 1929.

ERIK BJORKMAN *v.* COLUMBIA WRECKING & FUEL CO ET AL.

(279 Pac. 633.)

For appellant there was a brief over the name of *Mr. H. F. McInturff*, with an oral argument by *Mr. John M. Pipes.*

For respondents there was a brief and oral argument by *Mr. Harold V. Newlin.*

RAND, J.—Plaintiff commenced separate suits to foreclose two second mortgages given by the defend-

ant company, naming as defendants the same persons in each suit. The defense pleaded was usury in both suits. The suits were consolidated for trial and were tried together in the court below as one cause. Separate decrees were entered holding in each suit that the loans for which the notes and mortgages were given were usurious and forfeiting to the school fund of Multnomah County the amount of the unpaid principal and discharging the real property from the lien of the mortgages. Plaintiff appealed from both decrees and these appeals were heard and will be decided together.

The only difference in the facts of the two cases is in the dates on which the instruments were executed. Both notes and mortgages were for the sum of $800, for each of which plaintiff paid $720 only. Both notes bore interest at the rate of 8 per cent per annum from date until paid and were payable in monthly installments of $15 each for eleven months, the balance of the notes being payable one year from the date thereof.

The defendant, L. R. Dupre, was the president of the defendant company and holder of all its stock. Each note was made payable to his order and signed by the defendant company by him as president and attested by its secretary. The mortgages were signed in the same way and named Dupre as mortgagee. The first note and mortgage were each dated May 17, 1926, and the mortgage was assigned by a separate instrument dated the —— day of May, 1926, the assignment being recorded on May 27th. The last note and mortgage were dated June 1, 1926, and the assignment of that mortgage on June 7th. The notes were indorsed in blank by Dupre.

██ On their face and unexplained, these instruments show a sale and not a loan, and plaintiff contends that both transactions amounted to a sale and not a loan and that, for that reason, the court was in error in holding that the transactions were loans and not sales of existing securities at the time plaintiff paid over the money. This is the sole question for decision in the case, for if plaintiff bought the notes and mortgages after they had been executed and had become valid existing obligations of the defendant company, the statute against usury would have no application for the transaction would not be a loan.

There were but two witnesses called in the case, plaintiff and Dupre, and each testified in direct contradiction to what was testified to by the other as to the nature of the transaction. There is no dispute, however, as to the following facts: The defendant company owned a small tract of land in the City of Portland, which was mortgaged for the sum of $8,800. It was having difficulty in meeting the payments provided for in the mortgage and was also being pressed for payment by other creditors. It was practically insolvent and Dupre had no means of his own except his interest in the company. In order to meet its financial obligations, Dupre went to one Epton of the Epton Mortgage Company, and, after consulting with him, executed for the defendant company a power of attorney authorizing him or his company, for certain fees and commissions to be paid, to find a way by remortgaging the property to obtain money to take up said first mortgage and to provide the means for the payment of its other creditors. Epton took over said first mortgage and had Dupre execute for his company three first mortgages on different parcels of said tract, aggregating in all the sum of

$8,100 the record not disclosing to whom these mortgages were given, and to execute the two second mortgages in question. Plaintiff was one of Epton's customers and had had other dealings with him in transactions similar to those involved here. As to these facts there is no dispute.

The real dispute, however, is as follows: According to Dupre's testimony these notes and mortgages were prepared and executed while plaintiff was present and the money was paid over by him to Epton at that time. If Dupre's testimony is to be believed, the execution of the notes and mortgages by him for his company to himself and his indorsement in blank of the notes and delivery of them to plaintiff, together with the assignments of the mortgages, were intended as a device to cover up and conceal the real transactions and make them appear to be a sale of securities and not a loan of money. Plaintiff's testimony is that he was not present at the time these papers were prepared, that he was called to the office by Epton and was then informed that they were for sale and he denies positively that he loaned any money on said mortgages.

Notwithstanding plaintiff's testimony, however, the learned trial judge, who tried the case and had an opportunity of observing the manner and demeanor of the witnesses and was better able than we are to determine what weight and credibility should be given to their testimony, found that the transactions were intended to be loans of money and that the proceedings taken were intended to conceal the true nature of the transactions. While it is the province of the trial court or jury, in law actions, to determine the facts and such determination is conclusive upon the appeal, if there is any substantial evidence to sus-

tain such findings, in a suit in equity the cause is tried *de novo* and the findings of the lower court are not binding upon this court. However, after a study of the testimony of these two witnesses, we are of the opinion that the lower court was correct in holding that the transactions were loans and that the proceedings taken were intended as a means of concealing the true nature of transactions. The testimony of Dupre shows that he is an ignorant man and not well qualified to protect himself in business matters, but it is convincing and has every indication of being truthful, while the testimony of plaintiff is not convincing and has wholly failed to satisfy us of its truth. Epton himself was not called as a witness although present in court at the time of the trial. Plaintiff argues that because Epton was the agent of the defendant company, it was incumbent upon the defendants to call Epton as a witness and that their failure so to do is evidence of the weakness of their case. We do not think that the argument is sound. The testimony shows that plaintiff was a customer of Epton's and that, in making this deal, they were acting for their own interests and without regard to the rights of the defendant and that they were taking advantage of the necessities of the defendant company in order to obtain a usurious rate of interest upon the money loaned, which had it been successful would have netted plaintiff a rate of interest in excess of 18 per cent per annum upon the amount loaned.

For these reasons, the decrees of the lower court will be affirmed, and it is so ordered.     AFFIRMED.

COSHOW, C. J., and McBRIDE and ROSSMAN, JJ., concur.